## No. 5945.

### B. F. GEORGE vs. N. AMACKER.

The tutor who received the proceeds of the sale of slaves, the property of the minors under his tutorship, some time before the late civil war, is liable to the minors for the amount of those proceeds.

APPEAL from the Sixth Judicial District Court, parish of Tangipahoa. *Kemp*, J. Trial by jury.

*E. F. Russell* for plaintiff and appellant.

*O. P. Amacker* for defendant.

The opinion of the court was delivered by

SPENCER, J. Plaintiff, as transferee of a note of defendant for $767 50, brings this suit therefor. This note was given in renewal of a previous note of defendant for $750, in favor of Mrs. Emma Dean Odom.

The defense is that this note for $750, in renewal of which the note sued upon was given, was based upon a Confederate money and negro slave consideration, and was, therefore, void; and, therefore, that the note in renewal is also void. The case was tried by a jury, and there was verdict and judgment for defendant, and plaintiff appeals.

George vs. Amacker.

The facts are as follows: William P. Dean died some time about 1852, and defendant was appointed tutor of his minor children. Dean left an estate of some $6000, consisting of land, slaves, and movables. In 1853 this property was all sold and the proceeds, consisting of money and notes, were paid over to defendant, as tutor of the minors to the extent of their interest in the estate.

In May, 1861, Amacker rendered a provisional account of tutorship, in which he charges himself with a balance in his hands, due the minors, $3988 38; of which he shows the sum of $2599 24 to be due to one of his wards, Emma Dean. This account was duly homologated.

In 1866 the tutor filed his final account, which, upon appeal being taken, was compromised and a judgment rendered in accordance with the compromise terms. In this compromise judgment the tutor, N. Amacker, "agrees to pay to Mrs. Emma Dean (Odom)" (who was one of his wards) "the sum of two thousand dollars, one fourth cash, and the balance in one and two years, with interest from maturity until paid; notes to be given, each for the sum of $750." The tutor goes on to state, in said compromise, "*that he believes said arrangement a fair and equitable settlement of his indebtedness to the parties by reason of his tutorship of them, and that the same is advantageous to himself.*" Here we have the origin of the $750 note, basis of the note for $767 50 sued upon.

There was annexed to the tutor's final account a list of notes which he says were partitioned to him as tutor, from the estate of William P. Dean, "or have been derived therefrom in due course of administration for the best interests of the minors at the time, and are now on hand." This list consists almost entirely of the notes of one D. W. Thompson, said to be defendant's son-in-law, amounting to nearly $3000.

We presume the intention of the tutor (though not so expressed) was to force his wards to take this list of notes in satisfaction of what he owed them. But, as stated, the judgment on the compromise ignored all of these and gave a money judgment, in satisfaction of which, in part, the note sued on was by renewal given.

Strange to say, Amacker swears that the notes *on this list* were based upon Confederate money and slave consideration; and, stranger still, there was not one of the notes on this list which he derived from the estate of William P. Dean. He does not explain how *the cash* in his hands in 1861 got into the shape of *Confederate money and slave* notes in 1866.

The truth is that these notes did not belong to the minors. Their property was sold in 1853, and Amacker received and collected the proceeds long before Confederate money was dreamed of, and when a slave consideration was not under ban. True, the money he received

was largely the price of slaves sold in 1853. His self-abnegation and anxiety to save his wards from contact with this polluted gold, by appropriating it to himself and taking the sin thereof upon his own shoulders, are, to say the least, refreshing, and smack very much of the martyr. We prefer that he should not burden himself thus with the sins of others, notwithstanding the magnanimity of his desire to do so.

It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from be annulled and reversed, and it is now ordered and decreed that the plaintiff, B. F. George, do recover of the defendant, N. Amacker, the sum of seven hundred and sixty-seven dollars and fifty cents, with eight per cent interest thereon from March 1, 1869, till paid, and costs of both courts.